UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DANIEL O. EL, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ACTING WARDEN of FCI PEKIN, )<br>)<br>Respondent. ) | Case No. 17-cv-1163<br><br>Honorable Joe B. McDade |

## <u>O R D E R  &  O P I N I O N</u>

This matter is before the Court on Daniel O. El's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1). The matter has been fully briefed and is ready for disposition. For the reasons stated below, the Court grants the petition.

### BACKGROUND

El is currently incarcerated at the Federal Correctional Institution in Pekin, Illinois. On September 3, 2009, El pled guilty before this Court to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 11, *United States v. El*, No. 09-cr-10068). The Presentence Investigation Report ("PSR") identified three prior violent felonies that made El subject to an enhanced sentence under the United States Sentencing Guidelines § 4B1.4: (i) two separate armed robbery convictions and (ii) a conviction for Illinois residential burglary. (Doc. 13 at 6, *United States v. El*, No. 09-cr-10068). The United States Sentencing Guideline § 4B1.4 applies in the case of a defendant subject to an enhanced sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). This Court found that El did indeed qualify as an armed career criminal based on those convictions and

sentenced him to the mandatory minimum sentence of 180 months. (Doc. 15 at 1, *United States v. El*, No. 09-cr-10068).

El pled guilty by way of a written plea agreement in which he ostensibly (as shall be seen) agreed to waive any right to collaterally attack his conviction and sentence. (Doc. 11 at 4-5, *United States v. El*, No. 09-cr-10068). El also acknowledged that he understood and agreed that although the statutory maximum for violating 18 U.S.C. § 922(g) was 120 months, if he was found to have three or more prior convictions for a violent felony, the conviction would carry a mandatory minimum sentence of fifteen years (180 months) and a maximum sentence of life in prison. (Doc. 11 at 3, *United States v. El*, No. 09-cr-10068).

El has not appealed his sentence. However, El did file a motion to request counsel (Doc. 23, *United States v. El*, No. 09-cr-10068), which this Court granted, treated as a motion under 28 U.S.C. § 2255, and then allowed to be withdrawn without prejudice.

El now brings the instant petition for habeas corpus under 28 U.S.C. § 2241. (Doc. 1). He contends the law has changed since he was sentenced and the law has recognized that his Illinois conviction for residential burglary is not a generic burglary under the Armed Career Criminal Act and therefore, his sentence as an armed career criminal must be corrected.

## Legal Standards

Federal prisoners like El who wish to collaterally attack their convictions or sentences ordinarily must generally do so under 28 U.S.C. § 2255. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). They may petition under 28 U.S.C. § 2241 only in the

2

rare circumstance in which the remedy provided under § 2255 "is inadequate or ineffective to test the legality of his detention." *See* 28 U.S.C. § 2255(e) (which is often referred to as "the Savings Clause"). The mere fact that a petitioner's claim would be a second or successive § 2255 motion does not render § 2255 inadequate or ineffective. *See In re Davenport*, 147 F.3d 605, 609-10 (7th Cir. 1998).

## DISCUSSION

### I. Waiver of the Right to Collateral Attack

The Government contends El's petition should be rejected because El agreed to waive his right to collaterally attack his sentence and conviction. El's plea agreement contained the following waiver:

> The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack. <u>The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence.</u> The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this plea agreement, the defendant hereby knowingly and voluntarily waives his right to collaterally attack the conviction and/ or sentence. The rights waived by the defendant include his right to challenge the amount of any fine or

> restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

(Doc. 11 at 4-5, *United States v. El*, No. 09-cr-10068) (emphasis added). Waivers of collateral attacks are generally enforceable. *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). The Seventh Circuit has recognized few exceptions to the general enforceability, which include: involuntary plea agreements, the district court's reliance on an impermissible factor (like race), instances where the sentence exceeds the statutory maximum, or the defendant claims ineffective assistance of counsel during the negotiation of the plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citations omitted).

El contends that waiver does not apply to him because this is a situation where the sentence imposed exceeds the statutory maximum. He contends that an error in determining that a defendant has three prior convictions for serious drug offenses or violent felonies for purposes of the ACCA resulting in a sentence beyond the statutory maximum sentence qualifies for an exception to the general rule of enforceable waiver of collateral review rights. El acknowledges that the Seventh Circuit has rejected this argument in *United States v. Carson*, 855 F.3d 828, 830-31 (7th Cir. 2017) under similar circumstances present here. *Carson* explains that where the argument raised in apparent violation of a waiver must be decided on the merits in order to determine whether the sentence is unlawful, then the waiver would be eviscerated. Thus, such exceptions to waiver clauses are generally disallowed. Again, El acknowledges *Carson* and also acknowledges this Court is bound to follow Seventh Circuit precedent, so he has brought this argument to preserve it. The Court notes that the argument has been made and is part of the record, but it is rejected.

El also contends that he did not knowingly and intelligently waive his right to collaterally attack his sentence on any other basis other than 28 U.S.C. § 2255 because the language of the waiver is ambiguous on this point. In *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010), the Seventh Circuit explained that plea agreements are types of contracts subject to contract law principles and that "[t]o determine if a defendant knew and understood the plea agreement, [the court] must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge." *Id.* (internal citations omitted). Ambiguities in plea agreements are generally construed against the Government. *See United States v. Brown*, 779 F.3d 486, 492 (7th Cir. 2015).

Here, the language of the waiver is ambiguous as to whether any other avenues of collateral attack other than 28 U.S.C. § 2255 were contemplated by El and the drafter of the plea agreement. The waiver provides in relevant part: "The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence."

Clearly the focus of the language is on 28 U.S.C. § 2255 and its purview should accordingly be limited to § 2255. An example of a proper waiver that effectively encompasses all avenues of collateral attack is found in *Carson*: "Defendant knowingly and voluntarily waives the right to contest any aspect of the conviction

5

and sentence, including the manner in which the sentence was determined or imposed, that could be contested under Title 18 or Title 28, or under any other provision of federal law." 855 F.3d. at 829.

El's plea colloquy also supports his contention that the plea agreement was limited to § 2255 attacks and that El believed that to be so. The transcript reveals the Court asked El:

> Q. In your plea agreement, paragraph eight and paragraph nine, you are essentially waiving your right to appeal from your conviction and sentence. **And in paragraph nine you're waiving your right to collaterally attack your sentence under Section 2255 of Title 28 of the United States Code.** So essentially in those two sections of your plea agreement, you are waiving your rights to appeal from your conviction and sentence. Do you understand that?
>
> A. Yes, sir.
>
> Q. And it's mentioned in paragraph nine, in particular, that your attorney has discussed with you these appeal rights; you understand them, and that you're voluntarily and knowingly waiving them; is that right, sir?
>
> A. Yes, sir.

(Doc. 27 at 16-17, *United States v. El*, No. 1:09-cr-10068) (emphasis added).

The Court agrees with El that the instant 2241 petition is not subject to the waiver clause in his plea agreement because the plea agreement and the colloquy can either be taken to mean that the waiver was limited to § 2255 relief or at best ambiguous as to whether the waiver extends to avenues of collateral attack other than § 2255. Either way, the Court does not believe the waiver can be construed to foreclose the instant 2241 petition.

## II. Adequacy of 28 U.S.C. § 2255

The Government argues next that El cannot establish that § 2255 is inadequate or ineffective to test the legality of his sentence, as required to proceed in a § 2241 petition. A federal prisoner may utilize 28 U.S.C. § 2241 only in the rare circumstance in which the remedy provided under § 2255 "is inadequate or ineffective to test the legality of his detention." *See* 28 U.S.C. § 2255(e). Both parties recognize that § 2255 is "'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review." *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). The Government contends that the time constraints of § 2255 can never constitute a structural problem that legitimizes use of a § 2241 petition. The Court disagrees in El's case.

This is precisely the type of situation in which a § 2241 petition is properly used in lieu of a § 2255 motion. A federal prisoner must meet three criteria in order to invoke the Savings Clause of 28 U.S.C. § 2255(e) and obtain collateral relief pursuant to 28 U.S.C. § 2241. First, a prisoner "must show that he relies on a [new] statutory-interpretation case rather than a constitutional case;" second, he "must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion;" and third, "[the] sentence enhancement [must] have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted).

The cases El's claim depends upon, *Mathis v. United States*, 136 S. Ct. 2243 (U.S. 2016) and *United States v. Haney*, 840 F.3d 472 (7th Cir. 2016), are cases of

7

statutory interpretation, the reliance upon which is cognizable in a § 2241 petition. *See Dawkins v. United States*, 829 F.3d 549, 551 (7th Cir. 2016) ("An independent claim based on *Mathis* must be brought, if at all, in a petition under 28 U.S.C. § 2241."). The Government does not contest whether these cases apply retroactively on collateral review.

Next, El could not have brought his argument in a timely § 2255 motion. Putting aside the issue of his plea agreement waiver, El had one year from the date his sentence became final to file a motion to vacate or modify his sentence pursuant to 28 U.S.C. § 2255(f)(1). His sentence became final in 2010 and therefore his ability to file a timely § 2255 motion ended in 2011. The cases El's instant petition hinge upon, *Mathis*, 136 S. Ct. 2243 and *Haney*, 840 F.3d 472, were not decided until 2016. Moreover, they are statutory interpretation cases that did not announce new rules of law, and therefore did not start new one year statutes of limitations terms under 28 U.S.C. § 2255(f)(3).

Lastly, El's statutory maximum penalty was 120 months of imprisonment. 18 U.S.C. § 924(a)(2). Based on the armed career criminal enhancement, the Court imposed a sentence of 180 months of imprisonment. That means El was subjected to a sentence five years too long. That is a grave enough error to be deemed a miscarriage of justice corrigible upon collateral review. *Brown v. Rios*, 696 F.3d 638, 640–41 (7th Cir. 2012); *see also Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011) (explaining that the incorrect imposition of a career offender status is a miscarriage of justice).

8

For all these reasons, the Court finds that El is entitled to seek habeas relief under § 2241 in lieu of filing a § 2255 motion.

## III. Matching up Petitioner's Conviction under the then current Illinois Residential Burglary Statute with the ACCA's Generic Burglary

El was convicted of residential burglary in Illinois in 2004 and that conviction was utilized by this Court to find him an armed career criminal and subject him to an enhanced sentence of 180 months. The offense was defined as follows:

> A person commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft. This offense includes the offense of burglary as defined in Section 19-1.

720 ll. Comp. Stat. Ann. 5/19-3(a) (West 2003). The section 19-1 offense was defined as follows:

> A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4–102 of The Illinois Vehicle Code.

720 ll. Comp. Stat. Ann. 5/19-1 (West 2003). The general definition for the term "dwelling" as it appears in the Chapter for Criminal Offenses in the Compiled Illinois Statutes provides:

> (b) For the purposes of Section 19-3 of this Code, "dwelling" means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside.

720 Ill. Comp. Stat. Ann. 5/2-6 (West 1987).

9

In *Haney*, the Seventh Circuit held that under *Mathis*, the version of the general Illinois burglary statute then in use, did not categorically match up with the generic burglary offense utilized by the ACCA. 840 F.3d at 475. The *Haney* court specifically held that several of the locational means listed by the statute—housetrailer, watercraft, aircraft, motor vehicle… , railroad car—did not apply to buildings and structures, and thus made the Illinois general burglary statute broader than the generic burglary offense of the ACCA. *See id.* ("the 'generic' offense of burglary listed in § 924(e)(2)(B)(ii)—generic burglary requires unlawful entry into a building or other structure").

So it seems clear to the Court that the Illinois offense of residential burglary includes burglarizing mobile homes and trailers by way of 720 Ill. Comp. Stat. Ann. 5/2-6, as well as burglarizing housetrailers, watercrafts, aircrafts, motor vehicles and railroad cars, to the extent someone resides in such locations, since 720 Ill. Comp. Stat. Ann. 5/19-3(a) contains a sentence that specifically includes the offense of burglary as defined in section 19-1 within the definition of residential burglary. The Government does not contest this. Instead, the Government counsels the Court to look to the treatise "Substantive Criminal Law" by Wayne LaFave and Austin Scott to understand whether mobile homes and trailers are "structures" within the meaning of the generic burglary definition utilized by the ACCA, as the Government contends the Supreme Court did in *Taylor v. United States*, 495 U.S. 575, 598 (1990). The Court declines to do so because that was not the approach utilized in *Mathis*, 136 S. Ct. at 2250 or in *Haney*, 840 F.3d at 472.

In *Mathis*, the court found that the additional locational alternatives "land, water, or air vehicles" made the Iowa statute at issue there broader than generic burglary. *Id*. The *Mathis* court did not resort to trying to understand whether those vehicles could suffice as "structures" as that term was understood by legal scholars of the day. Nor did the *Haney* court resort to trying to figure out whether "housetrailers, watercrafts, aircrafts, motor vehicles, and railroad cars" could fit within the meaning of "structures" as that term is used in the generic burglary offense listed in the ACCA. 870 F.3d at 475-76. Therefore, this Court will not attempt to fit the locational alternatives of the 2003 version of Illinois residential burglary into the term "structures." Instead it will straightforwardly compare the locational alternatives of the 2003 version of Illinois residential burglary to the generic burglary offense listed in the ACCA.

The 2003 version of the Illinois residential burglary statute contains reference to several alternatively phrased locational means of commission that encompass locations beyond buildings and structures, and instead extends to vehicles such as mobile homes, trailers, housetrailers, watercrafts, aircrafts, motor vehicles and railroad cars. Just because a vehicle can be used as a dwelling, that is, a place where one resides, does not mean that vehicles are to be taken to be the equivalents of buildings or structures. The Court finds that the residential burglary statute El was convicted of has locational alternatives broader than generic burglary and therefore does not match up under the categorical approach and, in turn, could not be used to enhance El's sentence under the ACCA.

For these reasons, El should be resentenced to a maximum of 120 months for violating 18 U.S.C. § 922(g).

## Conclusion

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is GRANTED.

IT IS THEREFORE ORDERED:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is GRANTED;

2) Petitioner's armed career criminal enhanced sentence imposed by this Court in Case No. 1:09–cr–10068-1 is VACATED;

3) Respondent SHALL deliver Petitioner to this Court for resentencing in accordance with a writ to be issued by the Clerk in Case No. 1:09–cr–10068-1;

4) The Clerk is DIRECTED to enter Final Judgment hereon.

CASE TERMINATED.

Entered this <u>7th</u> day of September, 2017.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge